# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES ex. rel. RUSS & MURPHY

     Plaintiffs,

v.

NORTH AMERICAN RESCUE, LLC, et al.

     Defendants.

Civil Action No. 21-cv-04238-WB

**Oral Argument Requested**

---

**PLAINTIFF-RELATORS' MEMORANDUM OF LAW IN OPPOSITION TO C-A-T RESOURCES, LLC'S MOTION TO DISMISS SECOND AMENDED COMPLAINT**

---

David S. Gallacher
KUTAK ROCK LLP
1133 Connecticut Avenue, NW, Suite 1200
Washington, DC 20036
Phone: (202) 828-2437
Facsimile: (202) 828-2488
david.gallacher@kutakrock.com

Michael T. McDonnell III
KUTAK ROCK LLP
Two Logan Square, 100 N. 18th Street
Suite 1920
Philadelphia, Pennsylvania 19103
Phone: (215) 299-4384
Facsimile: (215) 981-0719
michael.mcdonnell@kutakrock.com

*Counsel for Plaintiff-Relators Corey Russ and Christopher Murphy*

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS..............................................................................................i

TABLE OF AUTHORITIES ......................................................................................ii

INTRODUCTION .....................................................................................................1

PROCEDURAL BACKGROUND..............................................................................2

STANDARD OF REVIEW ........................................................................................6

ARGUMENT ...........................................................................................................10

    A.    Count 1 Of The Second Amended Complaint Satisfies Rules 9(b) And
12(b)(6) By Plausibly Stating A Claim For Relief For CATR's False
Claims Act Violations By Falsely Certifying Compliance With The Berry
Amendment And TAA.......................................................................... 10

        1.    Plaintiffs Have Pled Sufficient Allegations To Satisfy Rule
12(b)(6) ........................................................................... 11

        2.    Plaintiffs Have Pled Sufficient Detail To Satisfy Rule 9(b) ................... 12

    B.    CATR Misstates And Mischaracterizes The "Public Disclosure" And
"Original Source" Doctrines ................................................................. 18

        1.    Background On The "Public Disclosure" And "Original Source"
Doctrines ......................................................................... 18

        2.    The Video Footage Referenced In The First Amended Complaint
Was Not A "Public Disclosure" Because It Did Not Disclose Any
Fraud ............................................................................... 20

        3.    Plaintiffs Do Not Need To Satisfy The Heightened "Original
Source" Requirements Invoked By CATR ............................................. 21

    C.    CATR Misstates The Sufficiency Of Allegations "Based On Information
And Belief" ......................................................................................... 22

CONCLUSION........................................................................................................ 24

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Alpizar-Fallas v. Favero,*
  908 F.3d 910 (3d Cir. 2018) ...................................................................................10

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ...........................................................................................6, 14

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007) ........................................................................................6, 7, 14

*Doe v. Princeton Univ.,*
  30 F.4th 335 (3d Cir. 2022) ........................................................................2, 6, 7, 12

*Doe v. Univ. of Scis,*
  961 F.3d 203 (3d Cir. 2020) .....................................................................................7

*Flora v. Cnty. of Luzerne,*
  776 F.3d 169 (3d Cir. 2015) .....................................................................................7

*Foglia v. Renal Ventures Mgmt., LLC,*
  754 F.3d 153 (3d Cir. 2014) ............................................................................ *passim*

*Fowler v. UPMC Shadyside,*
  578 F.3d 203 (3d Cir. 2009) .....................................................................................7

*Frederico v. Home Depot,*
  507 F.3d 188 (3d Cir. 2007) ...................................................................................10

*In re Burlington Coat Factory Sec. Litig.,*
  114 F.3d 1410 (3d Cir. 1997) ..............................................................................5, 23

*In re Craftmatic Sec. Litig.,*
  890 F.2d 628 (3d Cir. 1989) .....................................................................................8

*In re Rockefeller Ctr. Props., Inc. Secs. Litig.,*
  311 F.3d 198 (3d Cir. 2002) ...................................................................................10

*Island Creek Coal Co. v. Lake Shore, Inc.,*
  832 F.2d 274 (4th Cir. 1987) ....................................................................................2

*Mullin v. Balicki,*
  875 F.3d 140 (3d Cir. 2017) .....................................................................................2

*Oberwager v. McKechnie Ltd.*,
  351 F. App'x 708 (3d Cir. 2009) ........................................................................2

*Pinker v. Roche Holdings Ltd.*,
  292 F.3d 361 (3d Cir. 2002)..............................................................................7

*Rahimi v. Zydus Pharms. (USA) Inc.*,
  No. CV 15-6536-BRM-DEA, 2018 WL 515943 (D.N.J. Jan. 23, 2018) ................8

*State Farm Mut. Auto. Ins. Co. v. Ficchi*,
  Civ. No. 10-555, 2012 WL 1578247 (E. D. Pa. May 4, 2012)............................23

*Sturgeon v. Pharmerica Corp.*,
  438 F. Supp.3d 246 (E.D. Pa. 2020) ................................................................18

*Synthes, Inc. v. Marotta*,
  281 F.R.D. 217 (E.D. Pa. 2012)........................................................................5

*Umland v. PLANCO Fin. Servs., Inc.*,
  542 F.3d 59 (3d Cir. 2008)...............................................................................7

*United States v. Kindred Healthcare, Inc.*,
  469 F. Supp. 3d 431 (E.D. Pa. 2020) ............................................................7, 11

*United States v. Merck-Medco Managed Care, L.L.C.*,
  336 F. Supp. 2d 430 (E.D. Pa. 2004) .....................................................8, 12, 13

*U.S ex rel. Allstate Ins. Co. v. Phoenix Toxicology & Lab Servs., LLC*,
  No. CV 22-6303, 2024 WL 2785396 (D.N.J. May 30, 2024) ..............................7

*United States ex rel. Atkinson v. PA. Shipbuilding Co.*,
  473 F.3d 506 (3d Cir. 2007)............................................................................19

*U.S. ex rel. Bartlett v. Tyrone Hosp., Inc.*,
  234 F.R.D. 113 (W.D. Pa. 2006) .....................................................................23

*U.S. ex rel. Bergman v. Abbot Laboratories*,
  995 F. Supp.2d 357 (E.D. Pa. 2014) ...............................................................23

*U.S. ex rel. Bookwalter v. UPMC*,
  946 F.3d 162 (3d Cir. 2019)........................................................7, 10, 13, 14

*U.S. ex rel. Budike v. PECO Energy*,
  897 F. Supp.2d 300 (E.D. Pa. 2012) ...............................................................23

*U.S. ex rel. Customs Fraud Investigations, LLC v. Victaulic Co.*,
  839 F.3d 242 (3d Cir. 2016)..............................................................................2

*U.S. ex rel. Ellsworth Assoc., LLP v. CVS Health Corp.*,
   660 F. Supp. 3d 381 (E.D. Pa. 2023) ...................................................................12

*U.S. ex rel. Freedom Unlimited, Inc. v. City of Pittsburgh, Pennsylvania*,
   728 F. App'x 101 (3d Cir. 2018) .........................................................................12

*U.S. ex rel. Gohil v. Sanofi U.S. Servs. Inc.*,
   500 F. Supp. 3d 345 (E.D. Pa. 2020) ..............................................................7, 11

*U.S. ex rel. Grubbs v. Kanneganti*,
   565 F.3d 180 (5th Cir. 2009) ................................................................................9

*U.S. ex rel. Moore & Co., P.A. v. Majestic Blue Fisheries, LLC*,
   812 F.3d 294 (3d Cir. 2016)............................................................................10, 20

*U.S. ex rel. Schmidt v. Zimmer, Inc.*,
   386 F.3d 235 (3d Cir. 2004).................................................................................7

*U.S. ex rel. Schumann v. Astrazeneca Pharms. L.P.*,
   769 F.3d 837 (3d Cir. 2014).................................................................................20

*U.S. ex rel. Silver v. Omnicare, Inc.*,
   903 F.3d 78 (3d Cir. 2018)............................................................................19, 20

*U.S. ex rel. Smith v. Yale University*,
   415 F. Supp.2d 58 (D. Conn, 2006) ....................................................................23

*U.S. ex rel. Spay v. CVS Caremark Corp.*,
   913 F.Supp.2d 125 (E.D. Pa. 2012) ....................................................................25

*U.S. ex rel. Spay v. CVS Caremark Corp.*,
   Civ. No. 09-4672, 2013 WL 4525226 (E.D. Pa. Aug. 27, 2013) ...........................25

*U.S. ex rel. Zizic v. Q2Administrators, LLC*,
   728 F.3d 228 (3d Cir. 2013).................................................................................19

## <u>Statutes</u>

10 U.S.C. § 4862 ...................................................................................................3

19 U.S.C. §§ 2501-2581 .........................................................................................3

21 U.S.C. § 352(a) .................................................................................................4

31 U.S.C. §§ 3729-3733 .....................................................................................2, 10

31 U.S.C. § 3729 ............................................................................................ *passim*

31 U.S.C. § 3730(b)(2) ...........................................................................................4

31 U.S.C. § 3730(b)(4) ................................................................................................4

31 U.S.C. § 3730(e)(4) ....................................................................................... *passim*

Patient Protection and Affordable Care Act,
    Pub. L. No. 111-148, § 10104(j)(2), 124 Stat. 119, 901-02 (2010) ........................................20

## **Other Authorities**

16 C.F.R. § 323.2 ..............................................................................................17

48 C.F.R. § 225.7002 *et seq.* ..........................................................................3

48 C.F.R. Subpart 25.4 ....................................................................................3

Fed. R. Civ. P. 8(a)(2) ....................................................................... *passim*

Fed. R. Civ. P. 8(b) ......................................................................................2, 5

Fed. R. Civ. P. 9(b) .......................................................................... *passim*

Fed. R. Civ. P. 12(b)(6) ..................................................................... *passim*

Fed. R. Civ. P. 56 ..........................................................................................12

Local Civil Rule 5.1.5(a)(1) ..............................................................................4

Plaintiff-Relators Cory Russ and Chris Murphy ("Plaintiffs") hereby file this timely opposition to Defendant C-A-T Resources, LLC's ("CATR") Motion to Dismiss Plaintiffs' Second Amended Complaint [DKT 58] ("Motion").[1]

## INTRODUCTION

CATR's motion to dismiss should be denied because it misstates the law and otherwise mischaracterizes or disputes the facts in this case. Where Plaintiffs have alleged sufficient details in the Second Amended Complaint ("SAC") to describe a plausible scheme of fraud, and where CATR is on notice of the issues that it will need to defend against, Plaintiffs have met their basic burden under Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure.

What Plaintiffs have alleged in the SAC is sufficient to state a claim under the False Claims Act ("FCA"), putting CATR on notice of the claims against it and notifying CATR with enough particularity to advise it of the fraudulent scheme that is at the center of this lawsuit, hence NAR's motion should be denied in its entirety. The SAC alleges specific facts relating to CATR's tourniquets and source materials that were improperly sourced from China in violation of the Berry Amendment and TAA. *See* SAC ¶¶ 20, 31, 86, 91, 102, 105-106, 137-139, 142. Plaintiffs have alleged that these types of products were repackaged and resold to the U.S. Government, thereby camouflaging the foreign origin of the products and materials. *See* SAC ¶¶ 23, 87-98, 102, 105-106, 140-14186-98. Plaintiffs have alleged that CATR does not have sufficient manufacturing capacity to produce these products wholly in the U.S. *See* SAC ¶¶ 107-114, 141. And Plaintiffs have also alleged that CATR caused to be submitted specific claims for payment to the U.S.

---

[1] Due to the overlapping issues presented by the collection of motions filed on May 16, 2024, Plaintiffs incorporate by reference their oppositions to the motions to dismiss the SAC filed by defendants North American Rescue, LLC ("NAR") [DKT 56, 59] and Henry Schein, Inc. ("Schein") [DKT 57].

Government based on false representations that the products satisfied either the Berry Amendment or the TAA. *See* SAC ¶¶ 33-56.

CATR predictably dispute these allegations, but the proper place to dispute the facts is through a Rule 8(b) Answer, not a motion to dismiss. And the proper place for CATR to explore these allegations is through discovery, not unsworn criticisms regarding the veracity of the allegations. CATR's motion to dismiss should be denied so this case can be resolved on the merits. *See Doe v. Princeton Univ.*, 30 F.4th 335, 342 (3d Cir. 2022) ("The proper place to resolve factual disputes is not on a motion to dismiss, but on a motion for summary judgment."); *Mullin v. Balicki*, 875 F.3d 140, 149 (3d Cir. 2017) (citing *Island Creek Coal Co. v. Lake Shore, Inc.*, 832 F.2d 274, 279 (4th Cir. 1987) ("[i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits")); *U.S. ex rel. Customs Fraud Investigations, LLC v. Victaulic Co.,* 839 F.3d 242, 249 (3d Cir. 2016).

## PROCEDURAL BACKGROUND

The Plaintiffs here are outsiders. Plaintiffs do not work for, nor have they ever worked for, the Defendants. Plaintiffs are two former senior Army combat medics who worked at Combat Medical Systems LLC and Safeguard Medical – companies that provide warfighters and emergency personnel with medical supplies. Despite their outsider status and due to their knowledge of the industry and specific investigations into the Defendants, Plaintiffs commenced this *qui tam* action in 2021 on behalf of the United States to recover damages and civil penalties for Defendants' violations of the False Claims Act, 31 U.S.C. §§ 3729-3733.

Count 1 of the SAC alleges that Defendants participated in a scheme to defraud the U.S. Government by delivering medical products that did not meet the statutory country of origin requirements.[2] The two statutes at issue are:

1.    The Berry Amendment, 10 U.S.C. § 4862 (formerly codified at 10 U.S.C. 2533a) and 48 C.F.R. § 225.7002 *et seq.*, which requires certain products sold to the U.S. Department of Defense ("DOD") be wholly grown, reprocessed, reused, or produced in the U.S., and that all natural and synthetic fibers included in the products also be grown, reprocessed, reused, or produced entirely in the United States. Sourcing any materials from outside the U.S., let alone from China – whether as a manufactured product or as a source material – violates the Berry Amendment.

2.    The Trade Agreements Act ("TAA"), 19 U.S.C. §§ 2501-2581 and 48 C.F.R. Subpart 25.4, which requires products sold to the U.S. Government be substantially transformed in the United States or a designated country – a series of allied nations that does **not** include China.

*See* SAC ¶¶ 68-75.[3]

---

[2] Complying with these statutes is an important federal priority. *See generally* Congressional Research Service ("CRS"), Apr. 17, 2023, "Defense Primer: U.S. Defense Industrial Base" (available at https://crsreports.congress.gov/product/pdf/IF/IF10548); CRS, Jan. 20, 2023, "Buying American: The Berry and Kissell Amendments" (available at https://crsreports.congress.gov/product/pdf/IF/IF10605); CRS, Jan. 10, 2023, "U.S. Government Procurement and International Trade" (available at https://crsreports.congress.gov/product/pdf/R/R47243); CRS, Nov. 8, 2022, "The Buy American Act and Other Federal Procurement Domestic Content Restrictions" (available at https://crsreports.congress.gov/product/pdf/R/R46748); CRS, Feb. 8, 2019, "President Encourages Agencies to Buy American-Produced Goods and Materials" (available at https://crsreports.congress.gov/product/pdf/LSB/LSB10256).

[3] Counts 2 and 3 of the SAC raise similar allegations regarding non-conforming products, specifically false and misleading representations regarding the sterility of the products (Count 2),

In all, Defendants have fraudulently obtained no less than $400 million from the Government, enriching themselves at the expense of American taxpayers.

The original complaint in this *qui tam* action was filed in September 2021 *in camera* and under seal pursuant to 31 U.S.C. § 3730(b)(2) and Local Civil Rule 5.1.5(a)(1). [DKT 1]. On September 30, 2022, the U.S. Government declined to intervene in the action pursuant to 31 U.S.C. § 3730(b)(4)(B) [DKT 8], and by Order dated August 21, 2023, this matter was formally unsealed. [DKT 10]. Before serving Defendants with the unsealed complaint, Plaintiffs amended it, such that the First Amended Complaint ("FAC") [DKT 12], filed on November 10, 2023, was the first complaint with which Defendants were served.

Plaintiffs served Defendants NAR, CATR, and Schein with the FAC on November 13, 2023. [DKT 14, 15]. On February 23, 2024, Defendants filed motions under Rules 8(a), 9(b), and 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the FAC. [DKT 45, 46, 48]. Defendants argued (broadly) that Plaintiffs' FAC should be dismissed for failure to state a claim, failed to plead fraud with the requisite particularity, and was otherwise barred by the FCA's public disclosure doctrine.

In response to these motions to dismiss, on April 5, 2024, Plaintiffs moved for leave to amend the FAC. [DKT 51]. Plaintiffs attached the proposed Second Amended Complaint, including a redlined version to facilitate comparison to the FAC, to their motion for leave to amend. [DKT 51-2, 51-3]. Plaintiffs' amendments reflected a good-faith response to Defendants' motions to dismiss and Plaintiffs' desire to efficiently move this case forward on the merits, not an admission that the original FAC lacked merit. The proposed SAC provided the Defendants with

---

and false and misbranded labels, in violation of the U.S. Food and Drug Administration restrictions at 21 U.S.C. § 352(a) (Count 3). *See* SAC ¶¶ 145-176. However, these two counts are leveled only against defendants NAR and Schein, not CATR, so these issues are not discussed in this brief.

much of the relief that Defendants demanded in their motions to dismiss – dismissing one defendant (NAR Holdings), withdrawing FAC Count One relating to false and misleading product substitution, and providing additional details regarding Defendants' fraudulent conduct. The proposed SAC reduced the complexity of the action by reducing the claims and parties and by focusing on violations of the Berry Amendment and TAA with Defendants' non-U.S. origin/China-made medical supplies (SAC Count 1) and non-sterile medical supplies (SAC Counts 2 and 3).

Defendants nevertheless opposed Plaintiffs' motion for leave to amend, repeating many of the same arguments previously asserted in their respective motions to dismiss the FAC. [DKT 45, 45, 52 (NAR); DKT 48, 53 (CATR) and DKT 46, 52 (Schein)]. Specifically, Defendants opposed Plaintiffs' motion to file the SAC on grounds of futility,[4] lack of particularity under Rule 8(a) and 9(b), and public disclosures. On April 24, 2024, this Court granted Plaintiffs' motion for leave to amend in its entirety, ordered Plaintiffs to file their SAC by May 3, 2024, and denied as moot Defendants' respective motions to dismiss the FAC. [DKT 54]. On May 2, 2024, Plaintiffs filed the SAC. [DKT 55]. Rather than file Answers as required under Rule 8(b), Defendants have now again moved to dismiss the SAC rearguing many of the same points yet again that were rejected by the Court in granting Plaintiffs' motion to amend.

With regard to defendant CATR, its Motion raises a range of arguments in support of its motion to dismiss: (1) Plaintiffs have failed to allege sufficient details regarding the alleged fraud committed by CATR; (2) Plaintiffs have relied on information that has been publicly disclosed;

---

[4] "'Futility' means that the complaint, as amended, would fail to state a claim upon which relief could be granted." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997) (citations omitted). The "futility analysis on a motion to amend is essentially the same as a Rule 12(b)(6) motion." *Synthes, Inc. v. Marotta*, 281 F.R.D. 217, 229 (E.D. Pa. 2012) (citation omitted).

and (3) Plaintiffs improperly allege certain information "based on information and belief." [DKT 58-1]. As detailed below, this Motion should be denied.

CATR spends much time in its Motion railing against the First Amended Complaint [DKT 12], repeating many of CATR's prior criticisms of that now-obsolete pleading. In connection with these arguments, CATR trumpets certain facts that it claims to have already "proven," all of which would seem to negate the allegations in the SAC or otherwise undermine the veracity of Plaintiffs' claims. But on this matter of "proof," CATR is plainly incorrect. While it may be true that CATR's counsel has *argued* certain points, and while it is unlikely but *possible* that CATR's arguments might ultimately prove correct, the fact that CATR has *stated* a fact, does not *prove* that fact – nor does it prove that Plaintiffs' allegations in the SAC are indisputably false or otherwise implausible. Factual disputes such as those CATR is raising in its Response are meant to be resolved through discovery and consideration of admissible evidence. Arguing the relative merits of specific facts as CATR does here is inappropriate at this early stage of the case where factual inferences are made in favor of the Plaintiffs.

## STANDARD OF REVIEW

"There are two sides to every story. But a complaint need not tell both." *Princeton Univ.*, 30 F.4th at 339. So long as a plaintiff "plausibly tells his side", this case must proceed "for the rest of the story to develop." *Id.* at 339, 340.

To survive a motion to dismiss, "a complaint must provide 'a short and plain statement of the claim showing that the pleader is entitled to relief.' Fed. R. Civ. P. 8(a)(2). That requires 'plausibly suggesting' facts sufficient to 'draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Princeton Univ.*, 30 F.4th at 341-42 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). On a motion to dismiss under Rule 12(b)(6) for failure to state a claim, this court must accept plaintiffs' factual

allegations as true and consider those facts in the light most favorable to plaintiffs. *See Princeton Univ.*, 30 F.4th at 342 (citing *Doe v. Univ. of Scis*, 961 F.3d 203, 208, 210 n.3 (3d Cir. 2020)). The court must determine "whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Umland v. PLANCO Fin. Servs., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.,* 292 F.3d 361, 374 n.7 (3d Cir. 2002)). "This guidance remains 'even if it strikes a savvy judge that actual proof of those facts alleged is improbable and that a recovery is very remote and unlikely.'" *Princeton Univ.*, 30 F.4th at 342 (quoting *Fowler v. UPMC Shadyside*, 578 F.3d 203, 213 (3d Cir. 2009) and *Twombly*, 550 U.S. at 556). "The proper place to resolve factual disputes is not on a motion to dismiss, but on a motion for summary judgment." *Princeton Univ.*, 30 F.4th at 342 (citing *Flora v. Cnty. of Luzerne*, 776 F.3d 169, 175-76 & n.9 (3d Cir. 2015)).

The four basic elements of a FCA violation are falsity, causation, knowledge, and materiality. *See* 31 U.S.C. § 3729; *U.S. ex rel. Gohil v. Sanofi U.S. Servs. Inc.*, 500 F. Supp. 3d 345, 358 (E.D. Pa. 2020) ("To show that [defendant] violated the FCA, [plaintiff] must prove the following elements for each scheme: (1) falsity; (2) causation; (3) scienter; and (4) materiality"); *United States v. Kindred Healthcare, Inc.*, 469 F. Supp. 3d 431, 443-44 (E.D. Pa. 2020).[5]

Rule 9(b) states, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). "Rule 9(b) requires that claims of

---

[5] "The Third Circuit sometimes recounts these elements differently." *U.S ex rel. Allstate Ins. Co. v. Phoenix Toxicology & Lab Servs., LLC*, No. CV 22-6303 (RMB/AMD), 2024 WL 2785396, at *7 (D.N.J. May 30, 2024). "To state a prima facie FCA violation, a relator must plead that: "'(1) the defendant presented or caused to be presented to an agent of the United States a claim for payment; (2) the claim was false or fraudulent; and (3) the defendant knew the claim was false or fraudulent.'" *Id*. (quoting *U.S. ex rel. Bookwalter v. UPMC*, 946 F.3d 162, 175 (3d Cir. 2019) and *U.S. ex rel. Schmidt v. Zimmer, Inc.*, 386 F.3d 235, 242 (3d Cir. 2004)).

fraud be pleaded with particularity. This requirement applies to cases brought under the FCA, and for claims of common law fraud." *United States v. Merck-Medco Managed Care, L.L.C*., 336 F. Supp. 2d 430, 437 (E.D. Pa. 2004). "Rule 9(b) is to be read in conjunction with Rule 8, which requires pleadings to be as simple and concise as possible." *Id*. The purpose of the heightened pleading requirement in Rule 9(b) is to "provide[] defendants with fair notice of the plaintiffs' claims," and to "place the defendants on notice of the precise misconduct with which they are charged." *Foglia v. Renal Ventures Mgmt., LLC*, 754 F.3d 153, 156 (3d Cir. 2014); *Merck-Medco*, 336 F. Supp. 2d at 437.

"A plaintiff 'cannot be expected to have personal knowledge of the details of corporate internal affairs' in corporate fraud cases." *Merck-Medco*, 336 F. Supp. 2d at 437 (quoting *In re Craftmatic Sec. Litig.,* 890 F.2d 628, 645 (3d Cir. 1989)). "Rather, the Court will be satisfied when, on the face of the pleadings it can fairly be said that a defendant is capable of mustering a full defense." *Merck-Medco*, 336 F. Supp.2d at 437 (denying motion to dismiss, holding defendant "has clearly received notice sufficient to allow it to scour its own history of conduct and muster a defense").

In *Foglia*, the Third Circuit described "what Rule 9(b) requires of an FCA claimant." 754 F.3d at 155. The Third Circuit determined that FCA plaintiffs need not "identify a specific claim for payment at the pleading stage of the case to state a claim for relief." *Foglia*, 754 F.3d at 156 (emphasis in original, quotation omitted). In this Circuit, it is "sufficient for a plaintiff to allege particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted." *Id.* at 156 (quotation omitted); *Rahimi v. Zydus Pharms. (USA) Inc.*, No. CV 15-6536-BRM-DEA, 2018 WL 515943, at *4 (D.N.J. Jan. 23, 2018) (holding "the claims and invoices attached to the FAC provide a reliable indicia that false claims

were presented, and Relators provide[] more than sufficient details of the alleged scheme to put

Zydus on notice of their claims").

Indeed, the Third Circuit in *Foglia* expressly rejected a more rigid and heightened pleading

standard adopted by other circuits, explaining that:

> In *United States ex rel. Wilkins v. United Health Group, Inc.,* 659 F.3d 295, 308 (3d Cir. 2011), we noted that we had never "held that a plaintiff must identify a specific claim for payment *at the pleading stage* of the case to state a claim for relief." (Emphasis in the original, citation omitted)….
>
> [T]he text of the FCA, [ ] does not require that the exact content of the false claims in question be shown with the "representative samples" standard favored by the Fourth, Sixth, Eighth, and Eleventh Circuits.
>
> As the Fifth Circuit has stated, requiring this sort of detail at the pleading stage would be "one small step shy of requiring production of actual documentation with the complaint, a level of proof not demanded to win at trial and significantly more than any federal pleading rule contemplates." [*U.S. ex rel.*] *Grubbs* [*v. Kanneganti*], 565 F.3d [180] at 190 [(5th Cir. 2009)]….
>
> [T]he Solicitor General indicated that the United States also believes that the heightened or "rigid" pleading standard required by the Fourth, Sixth, Eighth, and Eleventh Circuits is "unsupported by Rule 9(b) and undermines the FCA's effectiveness as a tool to combat fraud against the United States." The Solicitor General's brief further states that "pleading the details of a specific false claim presented to the government is not an indispensable requirement of a viable FCA complaint." ….
>
> The Solicitor General also noted that even the Circuits which purport to follow the "rigid understanding of Rule 9(b)" have "not consistently adhered" to it, [ ] providing a further ground for doubting whether the "rigid" understanding of Rule 9(b) could be the correct one.

*Foglia*, 754 F.3d at 156 (internal citations and footnoted omitted). In sum, the Third Circuit has

held that: "[i]nsofar as the purpose of Rule 9(b) is to 'provide[ ] defendants with fair notice of the

plaintiffs' claims,' the more 'nuanced' approach followed by the First, Fifth, and Ninth Circuits

will suffice." *Id.* at 156-57.

"Rule 9(b)'s particularity requirement requires a plaintiff to allege 'all of the essential

factual background that would accompany the first paragraph of any newspaper story – that is, the

who, what, when, where, and how of the events at issue.'" *Bookwalter*, 946 F.3d at 176 (quoting

*U.S. ex rel. Moore & Co., P.A. v. Majestic Blue Fisheries, LLC*, 812 F.3d 294, 307 (3d Cir.

2016) and *In re Rockefeller Ctr. Props., Inc. Secs. Litig.*, 311 F.3d 198, 217 (3d Cir. 2002)).

"Rule 9(b) does not require the relators to plead anything more, such as the date, time,

place, or content of every single allegedly false [] claim." *Id.*

> The falsity here comes not from a particular misrepresentation, but from a set of
> circumstances that, if true, makes a whole set of claims at least prima facie false. It
> is enough to allege those circumstances with particularity. Doing so "inject[s]
> precision or some measure of substantiation into [the] fraud allegation" and
> "place[s] the defendant on notice of the precise misconduct with which [it is]
> charged." *Alpizar-Fallas v. Favero*, 908 F.3d 910, 919 (3d Cir. 2018) (quoting
> *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007)) (last alteration in
> original; internal quotation marks omitted).

*Bookwalter*, 946 F.3d at 176.

## ARGUMENT

**A.      Count 1 Of The Second Amended Complaint Satisfies Rules 9(b) And 12(b)(6)
By Plausibly Stating A Claim For Relief For CATR's False Claims Act
Violations By Falsely Certifying Compliance With The Berry Amendment
And TAA**

The civil False Claims Act, 31 U.S.C. §§ 3729-3733, prohibits individuals and companies

from making false statements in connection with a claim paid by the Government. If a false claim

is submitted "knowingly" (*i.e.*, with actual knowledge or deliberate ignorance of the false

statement, or acting with reckless disregard as to the truth or falsity of the information), and if the

false statement is material to the Government's decision to pay on the claim, then individuals and

companies may be subject to three times the damages incurred by the Government, as well as

statutory penalties for each false claim. *See* 31 U.S.C. § 3729. The key issue raised with Count 1

in the SAC is whether NAR participated in a scheme to defraud the Government by delivering

products that did not meet the country of origin requirements.

CATR first argues that Count 1 of the SAC has failed to plead credible allegations of fraud under the FCA (thereby failing Rule 12(b)(6)), and that all such allegations in the SAC are too vague, indefinite, and implausible to meet Rule 9(b)'s particularity requirement. *See* Motion at 9, 12-16. Both arguments are incorrect.

### 1.     Plaintiffs Have Pled Sufficient Allegations To Satisfy Rule 12(b)(6)

Plaintiffs have alleged the four basic elements of an FCA violation against CATR. *See* 31 U.S.C. § 3729; *Gohil*, 500 F. Supp. 3d at 358 ("To show that [defendant] violated the FCA, [plaintiff] must prove the following elements for each scheme: (1) falsity; (2) causation; (3) scienter; and (4) materiality."); *Kindred Healthcare*, 469 F. Supp.3d at 443-44.

1. Falsity: As described in ¶¶ 86-114, 131-144 of the SAC, CATR falsely represented that its tourniquets delivered to the Government complied with the Berry Amendment and TAA, despite the fact that at least some of these products or materials appear to have originated in China.

2. Causation: "CATR has caused NAR to submit false claims to the Government relating to sales of the Combat Application Tourniquet ("CAT"), giving rise to liability under the False Claims Act." SAC ¶ 9; *see also* SAC ¶ 144.[6]

3. Scienter: CATR "knowingly made false statements and submitted false records to the Government by knowingly and falsely representing the Products complied with the Berry Amendment and TAA." SAC ¶ 131; *see also* SAC ¶¶ 132-144.

4. Materiality: CATR's false statements certifying compliance with the Berry Amendment and TAA and deceptively concealing the Chinese origin of their Products [including the CAT] were material to the Government's decision to pay…." SAC ¶ 142. Clearly the facts alleged in the SAC regarding the false statements regarding country of origin of the CAT set forth plausible allegations that, if true, would have "a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property" by the Government. 31 U.S.C. § 3729(b)(4).

---

[6] FCA plaintiffs need not "identify a specific claim for payment at the pleading stage of the case to state a claim for relief." *Foglia,* 754 F.3d at 156. Although not necessary for the complaint to pass muster, Exhibits 1-14 to the SAC reference thousands of transactions reflecting sales of the CAT to the Government through CATR and its distributor, NAR. CATR's Motion does not challenge these exhibits. *See also* SAC ¶¶ 33-56 (describing the exhibits and providing context as to the claims that were submitted to the Government).

In its Motion, CATR does not seem to meaningfully dispute these last three elements[7] – causation, scienter, or materiality – focusing instead on the "falsity" allegations, arguing that the facts alleged do not support a credible claim of fraud. But while CATR *disputes* these allegations, claiming that these facts are speculative and wrong, this disagreement does not mean that Plaintiffs have failed their basic duty to plead credible claims for relief under the FCA.[8] Particularly where all facts alleged in the SAC should be construed in a manner favoring the Plaintiffs (*Princeton Univ.*, 30 F.4th at 342), and where the facts alleged in the SAC are sufficient to create a reasonable inference in Plaintiffs' favor, CATR's motion to dismiss for failure to state a claim should be denied.

### 2.    Plaintiffs Have Pled Sufficient Detail To Satisfy Rule 9(b)

Here, Federal Rule of Civil Procedure 9(b)'s particularity requirement applies only to pleading the "circumstances constituting fraud," Plaintiffs' other allegations are subject to Rule 8(a), and the law commands that the allegations be "as simple and precise and possible." *Merck-Medco*, 336 F. Supp. 2d at 437. Even "[m]alice, intent, knowledge, and other conditions of a

---

[7] It would be improper for CATR to attempt to raise new arguments in its reply brief, even if CATR now claims that these issues are disputed. *See Oberwager v. McKechnie Ltd.*, 351 F. App'x 708, 711 n.5 (3d Cir. 2009) ("It is, of course, inappropriate to raise an argument for the first time in a Reply brief.").

[8] For example, CATR attempts to introduce evidence beyond the pleadings in its Motion, including a graphic purporting to describe one or both of the boxes alleged in ¶¶ 86-98 of the SAC. *See* Motion at 14; *see also* Motion at 2-8 (recounting and disputing certain facts related to the now-obsolete First Amended Complaint and referencing several additional exhibits). Introducing evidence beyond the pleadings converts CATR's Motion into a motion for summary judgment, pursuant to Fed. R. Civ. P. 56. And given the plethora of facts in dispute at this early stage of the litigation, any such motion must be denied. *See Princeton Univ.*, 30 F.4th at 342; *see also U.S. ex rel. Freedom Unlimited, Inc. v. City of Pittsburgh, Pennsylvania*, 728 F. App'x 101, 105 (3d Cir. 2018) (reversing because the District Court improperly granted a motion to dismiss notwithstanding factual disputes over public disclosures); *U.S. ex rel. Ellsworth Assoc., LLP v. CVS Health Corp.*, 660 F. Supp. 3d 381, 396 (E.D. Pa. 2023) (denying a motion to dismiss over factual disputes relating to the public disclosure bar).

person's mind may be alleged generally." Fed. R. Civ. P. 9(b). Rule 9(b)'s requirement in an FCA case is read in conjunction with Rule 8, and a "Court will be satisfied when, on the face of the pleadings it can fairly be said that a defendant is capable of mustering a full defense." *Merck-Medco*, 336 F. Supp. 2d at 437.

CATR argues that the SAC does not contain enough allegations with sufficient specificity, thereby failing under Rule 9(b). But, CATR is again mistaken. Plaintiffs have alleged sufficient detail for CATR to know the "who, what, when, where, and how" of the alleged fraud, and to provide CATR with a fair opportunity to respond.[9] *See Bookwalter*, 946 F.3d at 176. But even more importantly, the SAC provides CATR with "fair notice" of Plaintiffs' claims. *Foglia*, 754 F.3d at 156. This is obvious *both* from the face of the 53-page, 176-paragraph complaint, with its 14 exhibits totaling nearly 300 pages, *and* the substance of CATR's motion to dismiss. Contrary to CATR's contention, here, the SAC gives all these necessary details:

- *Who*? Defendant CATR, the purported manufacturer of the CAT.

- *What*? As alleged in Count 1, CATR caused its distributor, NAR, to submit false claims for non-compliant tourniquets to the U. S. Government. In particular, CATR violated the Berry Amendment and the TAA by selling non-conforming products that did not meet the Government's country of origin requirements.

- *When*? From 2015 until the present time.

- *Where*? The false claims were submitted to the Government and the Department of Defense under contracts administered by the Defense Logistics Agency ("DLA") Troop Support. DLA Troop Support purchased these medical supplies primarily

---

[9] CATR spends much of its Motion describing allegations that were *removed* from the First Amended Complaint, attempting to draw conclusions as to what that removal might mean and otherwise impugning the SAC for being threadbare. *See* Motion at 6-9, 11-22. Leaving aside the fact that the SAC is the operative complaint against which CATR should be responding, removal of these allegations does not materially alter the core allegations which are otherwise sufficiently pled in the absence of those allegations. The SAC contains sufficient facts to plausibly plead that CATR's tourniquets are made in China and/or contain materials sourced from China, in violation of the Berry Amendment and the TAA.

through the Medical and Surgical Prime Vendor Program ('PVP") and DLA Troop Support's Electronic Catalog ("ECAT").

- *How*? When NAR and the other Defendants submitted or caused to be submitted invoices and claims for payment for tourniquets or other medical kits containing tourniquets, they certified compliance with the Berry Amendment and the TAA. CATR, as the purported manufacturer of the CAT, also failed to properly represent the country of origin for its CAT by applying a country of origin marking as required under U.S. Customs laws.[10]

The SAC makes all these allegations and describes how the false claims violated the Berry Amendment and TAA. *See Bookwalter*, 946 F.3d at 176.

Still, CATR focuses its arguments on two key points: (1) that the allegations in the SAC are circular and imprecise; and (2) that the allegations in the SAC are simply not plausible, failing to meet the basic pleading standards announced by the U.S. Supreme Court. *See* Motion at 9-10 (citing *Iqbal*, 556 U.S. at 678, *Twombly*, 550 U.S. at 556, and other authorities). We respond to these arguments in turn.

First, CATR criticizes the SAC for potentially circular references to fraud allegations "above" and allegations described "below." Motion at 15. Even though the lengthy SAC is relatively clear in the allegations, Plaintiffs nonetheless offer this roadmap regarding which fraud allegations apply to CATR:

- The allegations in the SAC relating to CATR's products and materials that were improperly sourced from China in violation of the Berry Amendment and TAA include the following examples:

  20.     Between 2015 and the present time, in violation of applicable country of origin requirements, NAR and CATR delivered CATs to the Government containing materials produced in the People's Republic of China ("China"). NAR and CATR also manufactured at least some of

---

[10] CATR states that "Relators do not allege violation of Section 304 of the Tariff Act as a basis for their claim of false certification of compliance with the Berry Amendment and TAA." Motion at 16, n.53. This is incorrect. *See* SAC ¶¶ 73, 98, 141.

these products in China. The applicable country of origin requirements, and the violation thereof, are discussed more fully below.

31.     As with the CAT, the Products contain material produced in China and are manufactured in China. NAR (and, in the case of the CAT, CATR) regularly sells these products to DoD despite their Chinese origin and in violation of the Berry Amendment and the TAA. NAR (and in the case of the CAT, CATR) convinces DoD to accept these Chinese-made goods by deceiving DoD personnel into believing they are of American make.

86.     As with the other Chinese-made goods NAR purchases from Golden Season, Golden Season advertised the CAT on its website. Golden Season's description of the CAT matched NAR's description of the CAT on its own website nearly word for word, including references to specific U.S. Patent numbers and the slogan "Official Tourniquet of the U.S. Army".

102.    NAR and CATR cause the boxes they use to ship the goods they sell to DoD to prominently bear the label "Made in U.S.A.", despite their goods' actual origin in China. These "Made in U.S.A." labels denote the goods contained in the boxes so labeled are produced in the United States and consist of all or virtually all U.S.-origin materials. These labels therefore constitute representations that the contents of these boxes comply with the Berry Amendment and TAA.

105.    Rather, NAR and CATR obtain a large volume of the products they sell to DoD that contain material subject to the Berry Amendment from China. NAR and CATR (and since 2019, Henry Schein) know these products have been manufactured in China.

106.    Defendants know that at least some of the products they sell to DoD do not comply with the Berry Amendment and TAA. NAR and CATR contracted to purchase these products from Golden Season, which manufactures its goods in China. Some of the goods NAR and CATR purchase from Golden Season pass through Golden Season's warehouse in Singapore, where no manufacturing activity occurs, while other goods are shipped directly to NAR and CATR from China. NAR and CATR's Chinese-made products are then trans-shipped to facilities in South Carolina, again with no additional manufacturing taking place outside China. And once received in South Carolina, NAR and CATR perform no additional manufacturing on the goods they acquire from China, as required under the TAA and the Berry Amendment.

*See* SAC ¶¶ 20, 31, 86, 102, 105-106; *see also* SAC ¶¶ 91, 137-139, 142

- The allegations in the SAC relating to the complex repackaging scheme used by CATR (and NAR), designed to camouflage the foreign origin of the products and materials, include the following examples:

  23.    Defendants NAR, Henry Schein, and CATR orchestrated a complex scheme to deceive DoD into accepting Chinese-made goods in violation of the Berry Amendment and the Trade Agreements Act.

  102.   NAR and CATR cause the boxes they use to ship the goods they sell to DoD to prominently bear the label "Made in U.S.A.", despite their goods' actual origin in China. These "Made in U.S.A." labels denote the goods contained in the boxes so labeled are produced in the United States and consist of all or virtually all U.S.-origin materials. These labels therefore constitute representations that the contents of these boxes comply with the Berry Amendment and TAA.

  140.   NAR and CATR caused boxes containing their Products and shipped to DoD facilities to be labeled "Made in U.S.A.", despite at all times knowing these Products were not made in the United States and were instead made in China using Chinese content.

  141.   In a further effort to conceal the Chinese origin of their products, NAR, CATR, and (since March 2019) Henry Schein knowingly and intentionally omitted any country-of-origin markings from the CATs they sold to DoD, in violation of Section 304 of the Tariff Act of 1930. Such markings would have revealed to DoD these CATs were in fact produced in China and therefore also revealed the Defendants' fraudulent scheme to sell Chinese-made goods to DoD in violation of the Berry Amendment and TAA.

  *See* SAC ¶¶ 23, 102, 140-141; *see also* SAC ¶¶ 87-98, 105-106.

- The allegations in the SAC relating to CATR's manufacturing capability include the following examples: .

  107.   Defendants' claims that they comply with the Berry Amendment and TAA are particularly suspicious because, as described below, Defendants NAR and CATR lack sufficient manufacturing capacity to make all their purportedly Berry Amendment-compliant CATs in the United States.

  108.   NAR's facility at 35 Tedwall Court, Greer, South Carolina performs no manufacturing activity. This facility serves as a delivery point for goods manufactured and sent to NAR by third-party suppliers, including its

16

> Chinese suppliers. NAR receives these goods at its Greer facility, sorts them and packages them into the various medical kits and sets NAR offers to DoD purchasers.

111. CATR occupies a portion of one floor of the Rock Hill Facility, about 12,000 square feet of space in total, where it claims that it manufactures the CAT. Upon information and belief, this facility contains only basic assembly equipment, and it not sufficient to manufacture the volume of tourniquets that CATR and NAR are selling to the Government.

*See* SAC ¶¶ 107-108, 111; *see also* SAC ¶¶ 109-110, 112-114, 141.

The clarity that CATR claims is missing is plain on the face of the SAC.

<u>Second</u>, given the facts set forth in the SAC, it is clear that Plaintiffs have alleged a plausible theory of fraud. In order for CATR's products to be properly labeled as "Made in the U.S.A." the tourniquets need to be "all or virtually all of U.S. origin." *See* SAC ¶ 91; *see also* 16 C.F.R. § 323.2 (allowing a "Made in the United States" label only when "the final assembly or processing of the product occurs in the United States, all significant processing that goes into the product occurs in the United States, and all or virtually all ingredients or components of the product are made and sourced in the United States."). But if CATR is sourcing products and materials from China (as Plaintiffs have alleged), and if CATR is repackaging its products in the United States (as Plaintiffs have also alleged), and if CATR cannot realistically be manufacturing its tourniquets in the United States at the level required to satisfy the Berry Amendment and the TAA (as Plaintiffs have also alleged), then it most certainly stands to reason that CATR has committed a fraud by causing false claims to be submitted to the Government. CATR's response to these allegations is to dispute them, characterizing them as simply implausible. But, as stated before, the fact that CATR *disagrees* with these facts does not mean that those facts (as argued) are true; hence, dismissal is not appropriate. Plaintiffs have alleged a plausible theory of fraudulent conduct by CATR and its distributor, NAR, and as such CATR's Motion should be denied.

### B. CATR Misstates And Mischaracterizes The "Public Disclosure" And "Original Source" Doctrines

CATR also argues that Plaintiffs' allegations are insufficient because the allegations have already been "publicly disclosed," and Plaintiffs do not otherwise qualify as an "original source" for the allegations in the SAC. *See* Motion at 16-22. But CATR misstates and mischaracterizes the FCA's "public disclosure" and "original source" doctrines. Where there has not been any public disclosure of the *fraud* alleged in the SAC, Plaintiffs do not need to otherwise qualify as an "original source" pursuant to 31 U.S.C. § 3730(e)(4). CATR's Motion on this alternate ground should be denied.

### 1. Background On The "Public Disclosure" And "Original Source" Doctrines

The "public disclosure" bar under the civil False Claims Act, 31 U.S.C. § 3730(e)(4), precludes a plaintiff from pursuing a *qui tam* action if the details regarding the alleged fraud have already been publicly disclosed. *See Sturgeon v. Pharmerica Corp.*, 438 F. Supp. 3d 246, 261-62 (E.D. Pa. 2020). Here, Plaintiffs maintain that there have not been any "public disclosures" that would bar this Court's consideration under 31 U.S.C. § 3730(e)(4). But even if there had been such a public disclosure, Plaintiffs are still allowed to pursue the action notwithstanding the public disclosure if the plaintiffs qualify as an "original source" of the information. *See* 31 U.S.C. § 3730(e)(4); *Sturgeon*, 438 F. Supp. 3d at 261-62.

To determine if the public disclosure bar applies, courts consider whether there has been: "(1) a public disclosure (2) in one of the statute's specified fora (3) of allegations or transactions of fraud (4) that are substantially the same as those alleged by the relator." *Sturgeon*, 438 F. Supp.3d at 263. If all four of these requirements are met, the FCA action is barred by statute unless the plaintiff qualifies as an original source. *Id.*

The Third Circuit has emphasized that the *whole* of the fraud must have been publicly disclosed in order to trigger the public disclosure bar:

> To determine whether a fraudulent transaction has been publicly disclosed by information contained in one of the enumerated public sources, this Court employs a formula of sorts, where:
>
>> "If X + Y = Z, Z represents the allegation of fraud and X and Y represent its essential elements. In order to disclose the fraudulent transaction publicly, the combination of X and Y must be revealed, from which readers or listeners may infer Z, i.e., the conclusion that fraud has been committed."

*U.S. ex rel. Silver v. Omnicare, Inc.*, 903 F.3d 78, 83–84 (3d Cir. 2018) (footnote omitted) (quoting

*U.S. ex rel. Zizic v. Q2Administrators, LLC*, 728 F.3d 228, 236 (3d Cir. 2013)). Furthermore:

> For a court to conclude that an inference of fraud [Z] has been publicly disclosed such that the public disclosure bar is triggered, then, "both a misrepresented [X] and a true [Y] state of facts must be publicly disclosed." *United States ex rel. Atkinson v. PA. Shipbuilding Co.*, 473 F.3d 506, 519 (3d Cir. 2007). Where the fraud has been publicly disclosed – either because the public documents set out the allegation of fraud itself [Z] or its essential elements [X+Y] – a relator's claim will be barred so long as it is "'supported by' or 'substantially similar to' [the] public disclosures." *Zizic*, 28 F.3d at 237.

*Silver*, 903 F.3d at 84 (brackets in original).

Here, no such public disclosure has occurred. However, as noted above (and for the sake of exploring CATR's arguments to their natural conclusion), even if the public disclosure bar applies, a *qui tam* plaintiff can nonetheless qualify as an "original source" in one of two ways: (1) by voluntarily disclosing the information to the government before any public disclosure; or (2) by having knowledge that is independent of and materially adds to the publicly disclosed allegations, and voluntarily providing that information to the government before filing suit. *See* 31 U.S.C. § 3730(e)(4)(B).

In the Third Circuit, the original source exception requires the plaintiff to have knowledge of the fraudulent scheme (independent of the public disclosure), even if the plaintiff lacks

knowledge of all the underlying facts. *See Moore & Co.*, 812 F.3d at 307. So, the plaintiff's allegations need not be strictly limited to what they have direct, personal knowledge of, as long as they have knowledge of the critical elements of the fraudulent scheme. *See id.*

Importantly, CATR ignores the fact that there has not been a public disclosure and instead focuses on the original source issue. Furthermore, CATR's focus on the original source issue leads them to argue that Plaintiffs must possess "direct knowledge" of the alleged fraudulent conduct (Motion at 19-20), but this argument misstates the law regarding the need to have "direct knowledge" for the purposes of satisfying the "original source" doctrine. After all, the FCA was amended in 2010 to remove any such requirement. *See U.S. ex rel. Schumann v. Astrazeneca Pharms. L.P.*, 769 F.3d 837, 841 n.1 (3d Cir. 2014) (referencing the Patient Protection and Affordable Care Act, Pub. L. No. 111-148, § 10104(j)(2), 124 Stat. 119, 901-02 (2010), which amended 31 U.S.C. § 3730(e)(4) and removed the "direct and independent knowledge" requirement). As such, all cases cited by CATR interpreting the pre-2010 version of the statute are inapposite.

### 2. The Video Footage Referenced In The First Amended Complaint Was Not A "Public Disclosure" Because It Did Not Disclose Any Fraud

Here, the only "public disclosure" that CATR identifies – a reference in the First Amended Complaint to a March 2020 video showing CATR employees working in a facility that contained only basic packaging equipment – is not actually included in the SAC. *See* Motion at 16-19. But even if this video does form (in whole or in part) the basis for Plaintiffs' allegations in ¶¶ 107-114, CATR's "public disclosure" argument remains a red herring. This is because the video footage CATR refers to did not give rise to a "public disclosure" under the FCA because it did not relate to the public disclosure of the *fraud*. *See Silver*, 903 F.3d at 83-84. And a video that reveals

CATR's limited manufacturing capacity is not evidence, standing alone, of a *fraud*, merely of the fact that CATR has limited manufacturing capacity.

Importantly, CATR does not allege that the video reflects a public disclosure *of an alleged fraud*. In fact, how could it? After all, the publicly available video footage from March 2020 merely touched on CATR's manufacturing capacity at its Rock Hill, South Carolina facility, including whether CATR could produce CATs at the rate of 15,000 tourniquets per day. *See* Motion at 11. Instead, CATR simply argues that the video has been "publicly disclosed" by way of a March 2020 newscast, thereafter concluding that the public disclosure bar at 31 U.S.C. § 3730(e)(4) necessarily applies. But this argument misstates the law and should be rejected.[11]

### 3.    Plaintiffs Do Not Need To Satisfy The Heightened "Original Source" Requirements Invoked By CATR

Beyond mischaracterizing the public disclosure bar, CATR also mischaracterizes the "original source" requirement.[12] Here, Plaintiffs can demonstrate that they otherwise qualify as an original source under 31 U.S.C. § 3730(e)(4)(B)(i) because Plaintiffs "voluntarily disclosed to the Government the information on which allegations or transactions in a claim [were] based."

---

[11] CATR also argues that Plaintiffs' removal of certain "key facts" from the SAC demonstrates the applicability of the public disclosure bar, seeming to argue that Plaintiffs have conceded that the video footage was a public disclosure that would be fatal to Plaintiffs' claims. *See* Motion at 6-8, 18. But CATR has again jumped to a conclusion, and CATR is again incorrect. Plaintiffs have not conceded anything; Plaintiffs simply updated the SAC to remove reference to the video footage, while continuing to allege that CATR lacks the actual manufacturing capacity in the U.S. to produce tourniquets that comply with the Berry Amendment and TAA. *See* SAC ¶¶ 107-114. The extent to which CATR possesses the actual manufacturing capacity that it might otherwise claim is a factual dispute that will need to be resolved through discovery, not a motion to dismiss.

[12] Plaintiffs must demonstrate that they are a valid original source only after it is determined that the fraud allegations have been publicly disclosed. Beyond the March 2020 video discussed above, which is *not* alleged in the SAC, CATR does not allege that any other information has otherwise been "publicly disclosed." The original source cases cited by CATR are therefore inapposite.

Plaintiffs disclosed their fraud allegations to the Government in April 2019, nearly a year before the so-called "public disclosure" took place in March 2020. *See* SAC ¶ 13.

*     *     *

In short, CATR's Motion fails to articulate an actual "public disclosure" for which Plaintiffs must demonstrate that they are an "original source" under 31 U.S.C. § 3730(e)(4). All of the cases cited by CATR are not only inapposite, but also mischaracterize the current state of the law, failing to consider that 31 U.S.C. § 3730(e)(4) was amended in 2010. Consequently, CATR's Motion should be denied.

### C.    CATR Misstates The Sufficiency Of Allegations "Based On Information And Belief"

CATR's Motion also lobs a handful of additional arguments against the SAC, criticizing Plaintiffs for alleging information "based on information and belief" or otherwise failing to explain how or where Plaintiffs obtained the information that they allege in the SAC. *See* Motion at 16-22. None of these arguments have merit or justify dismissal of the SAC.

First, CATR alleges that Plaintiffs are required to set forth a specific description of how they learned the information described in the SAC. *See* Motion at 16. But the cases cited and the rule invoked by CATR apply only when the public disclosure bar has been properly invoked under 31 U.S.C. § 3730(e)(4). Where CATR has not pointed to any specific allegations in the SAC that are properly barred under the public disclosure bar, CATR's argument misstates the law.

Next, CATR criticizes Plaintiffs for not having firsthand knowledge of certain facts in the SAC, claiming that it is improper for Plaintiffs to rely on their investigatory agents from Kroll. Motion at 19-22; *see also* SAC ¶ 13, n.1 and n.2 (identifying Kroll personnel as investigating agents). In truth, Plaintiffs are entitled to rely upon agents and investigators to gather information, and CATR is free to explore these issues during discovery. But CATR is not able to brush the

22

allegations aside through a motion to dismiss, particularly where all of the cases cited by CATR in its Motion relate to whether Plaintiffs are an original source, which (as described above) misstates the law.[13]

Finally, CATR's Motion criticizes Plaintiffs for making certain allegations "based on information and belief." *See* Motion at 16-19. But the cases cited by CATR do not support this argument. *See* Motion at 18-19.[14] In fact, as CATR explicitly notes in its Motion, "Rule 9(b) permits pleading 'based upon information and belief,' particularly where key factual information remains within the defendant's control." Motion at 18 (citing *Burlington*, 114 F.3d at 1418). It is generally sufficient for an outsider-plaintiff (such as is the case with the current Plaintiffs) to allege

---

[13] CATR particularly relies on *U.S. ex rel. Smith v. Yale Univ.*, 415 F. Supp. 2d 58 (D. Conn, 2006), for support of the fact that a plaintiff cannot rely on third party sources in proving its claims. *See* Motion at 20-22. That case involved a legal investigative report produced in discovery by the defendant in separate litigation, with the plaintiff later trying to use that same report as the basis for a False Claims Act case. *See Smith*, 415 F. Supp.2d at 81-82. That is markedly different from what we have here where the Plaintiffs (and their agents) conducted their own investigation into the underlying fraud before filing any suit against Defendants. *Cf. Smith*, 415 F. Supp. 2d at 81 (emphasizing that "personal observation at the time or … after-the-fact investigation" could result in an independent understanding of the underlying facts).

[14] In *State Farm Mut. Auto. Ins. Co. v. Ficchi*, Civ. No. 10-555, 2012 WL 1578247, at *5 (E. D. Pa. May 4, 2012)), the court never reached the issue of whether allegations made "upon information and belief" disqualify a complaint. In filing an amended complaint, the plaintiff in *Ficchi* removed all references to "upon information and belief." *See id.* at *4. In *U.S. ex rel. Spay v. CVS Caremark Corp.*, Civ. No. 09-4672, 2013 WL 4525226, at *2 (E.D. Pa. Aug. 27, 2013), the court ruled on a discovery dispute, not a motion to dismiss. In fact, the court had previously denied the defendants' motion to dismiss, allowing the case to proceed to discovery. *See U.S. ex rel. Spay v. CVS Caremark Corp.*, 913 F. Supp. 2d 125, 185 (E.D. Pa. 2012) (rejecting defendants' motion to dismiss an FCA complaint based on Rule 9(b) and Rule 12(b)(6)). CATR also cites *U.S. ex rel. Bartlett v. Tyrone Hosp., Inc.*, 234 F.R.D. 113, 122 (W.D. Pa. 2006), for the proposition that Plaintiffs need to provide a detailed explanation of what they have done to try to obtain information from the opposing party. But the *Bartlett* case cites to no authority for this novel proposition. And the case has been criticized as creating a too-narrow standard when evaluating a motion to dismiss. *See U.S. ex rel. Bergman v. Abbot Laboratories*, 995 F. Supp.2d 357, 371-73 (E.D. Pa. 2014); *U.S. ex rel. Budike v. PECO Energy*, 897 F. Supp. 2d 300, 319-20 (E.D. Pa. 2012). Moreover, where the facts of that case involved whistleblowers who used to work for the defendant, the plaintiffs were expected to have a higher degree of knowledge about the company's internal operations. *Bartlett*, 234 F.R.D. at 122. That is different from the present case.

particular details of a scheme without the high level of detail that CATR otherwise demands, particularly where CATR is already on notice of the who, what, when, where, and how of the alleged misconduct. *See Foglia*, 754 F.3d at 156-57.

## CONCLUSION

For all the forgoing reasons, Plaintiffs respectfully request that this Court deny CATR's motion to dismiss Count 1 of the SAC.


Dated: June 6, 2024                     Respectfully submitted,


                                        s/ David S. Gallacher
                                        David S. Gallacher
                                        KUTAK ROCK LLP
                                        1133 Connecticut Avenue, NW, Suite 1200
                                        Washington, DC 20036
                                        Phone: (202) 828-2437
                                        Facsimile: (202) 828-2488
                                        david.gallacher@kutakrock.com


                                        Michael T. McDonnell III
                                        KUTAK ROCK LLP
                                        Two Logan Square, 100 N. 18th Street
                                        Suite 1920
                                        Philadelphia, Pennsylvania 19103
                                        Phone: (215) 299-4384
                                        Facsimile: (215) 981-0719
                                        michael.mcdonnell@kutakrock.com

                                        *Counsel for Plaintiff-Relators Corey Russ and Christopher Murphy*

## CERTIFICATE OF SERVICE

I hereby certify that on this 6th day of June 2024, a copy of the foregoing was filed through the Court's ECF system and is available to all counsel of record who are registered to receive a Notice of Electronic Filing for this case.

*s/ David S. Gallacher*